343 So.2d 396 (1977)
Mary Louise TUCKER et al.
v.
The CITY COUNCIL FOR the CITY OF NEW ORLEANS et al.
No. 8208.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1977.
Rehearing Denied March 15, 1977.
Writ Refused May 6, 1977.
*397 Thomas W. Tucker, New Orleans, for plaintiffs-appellants.
Lawrence J. Smith, Levy & Smith, New Orleans, for the Jackson Avenue Evangelical Congregation.
Jack P. Panno, Asst. City Atty., for the City Council for the City of New Orleans, and others.
Before SAMUEL, REDMANN and BEER, JJ.
REDMANN, Judge.
Conflicting interests of a society, each entirely worthy in itself, often each look to legislatures for preference and to courts for resolution of their conflicts. Protection of the marine and swamp life of Lake Pontchartrain competes with a plan to extend an airport runway to better serve air transportation. The preservation for present and future generations of an architecturally resplendent or historically important building of a bygone era conflicts with the desire of the building's owner to construct an efficient modern edifice (or to provide parking space) more suitable to his own plans to serve present and future generations. Even the relevant rules of law present a certain conflict requiring accommodation, as laws to foster preservation of even large districts seek preference over laws providing freedom of property owners to exercise dominion over their property, to do with it what they will.
The case before us presents a conflict between preservationists and building owner. Society's interest in preserving buildings has resulted in constitutional provision, statute and ordinance indicative of restriction upon an owner's right. But those laws do not purport to resolve the particular conflict over an individual building. The question that this case asks is who shall resolve the conflict, more than in whose favor the conflict shall be resolved. An historic district commission decided in the preservationists' favor and the city council which created the commission and retained power to "reverse" it did so, resolving the conflict in the owner's favor, authorizing the owner to demolish 100-year-old residences in order to provide a safe parking area for attendants at religious services. The preservationists, appealing from a district court's affirmation of the council, present as their main argument that it is the commission's duty to resolve the conflicts, and the council's power to reverse only in cases where the commission has resolved a conflict without a proper evidentiary basis. We conclude to the contrary and affirm the district court.
Until recent times such a conflict would not have reached the courts. An owner's fundamental right in his property since Roman law days included usus, fructus and abusus: use, fruits and abusethe power to destroy (in Louisiana, C.C. 491, "to use, to enjoy and to dispose of . . . in the most unlimited manner"). Perhaps the principal stricture on the owner's absolute dominion usque ad coelum et ad inferos ("to heaven and hell" above and below his land's surface; in Louisiana, C.C. 505, "all that is directly above and under it") was the obligation to respect his neighbor's similar supremacy: sic utere tuo ut alienum non laedasso use your own as not to harm another (the basis of La.C.C. 667). The sic *398 utere principle itself resolved a conflict between theoretical supremacies of adjacent neighborsand, in our Civil Code as article 667, resolves conflicts between neighbors even today. The principle has not, however, been extended to conflicts like that before us, where neighbors, perhaps somewhat removed from the immediate neighborhood, seek to prevent demolition of old (and somewhat run-down) houses on the theory that the demolition will detract from the overall neighborhood by depriving others of the quaint view of a worthy and attractive 100-year-old architectural style (presumably somewhat prevalent in the vicinity, although there are also an automobile repair shop and other less attractive buildings).
Owner's rights have seen more limits over the years, as society recognized that one's use of one's property could adversely affect neighbors, adjacent and more remote, in a multitude of ways. Building codes and zoning laws represent severe limitations upon urban and suburban proprietors' rights. Preservation ordinances restrict those rights even more.
La.Const. (1974) art. 6, § 17 provides the foundation for preservation ordinances:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.
La. Acts 1975 No. 804 (printed, under authority of La.R.S. 24:253, as an amendment of R.S. 25:731-745) authorizes municipalities to establish historic preservation district commissions, after certain steps "shall be taken," § 3. Although the record does not reveal whether other steps were taken, the New Orleans Council did by its Ordinances 5991 and 5992 MCS, adopted June 24, 1976, create an historic preservation district[1] and the defendant commission. As does the authorizing statute's § 7A, Ordinance 5992 § VI(A) prohibits demolition within any historic preservation district except with commission approval.
The statute itself, § 11, gives to anyone aggrieved by commission action the "right to apply . . . to the governing body. . . for reversal or modification thereof;" and further provides "Said governing body shall have the right to reverse, change or modify any decision of the commission" by a two-thirds vote. Similar wording is found in Ord. 5992 § XIV(A).
Thus, both the statute and the ordinance creating the commission have provided for the ultimate control of the historic districts to remain in the governing body, although the statute requires a two-thirds vote to reverse. Here, the governing body which established the historic district and the historic district commission has unanimously reversed the commission's decision and has granted permission to demolish the structures.
The commission may indeed have acted on a reasonable basis. Even the untrained eye can see the beauty and distinctiveness of design of the houses, and even (as did the commission) deem one more worthy of preservation than the other. Yet the city council's basis is no less reasonable: demolition would provide safe parking area adjacent to defendant congregation's church to protect the members from further beatings and burglaries such as they have experienced when parking elsewhere to attend services.
There are many, many values and variables that can be wholly legitimate factors in evaluating the meritorious but conflicting *399 goals of the preservationists on the one hand and the owners on the other. Presumably a legislative recognition of this multi-faceted process of decision leaves in the governing authority the power to override the commission, while legislative recognition of the commission as more experienced (ultimately) in preservation aims requires the governing authority to act by two-thirds vote, rather than by simple majority.
We therefore understand § 11 of the statute to mean literally what it says: the governing authority, the elected representatives of the citizens of the community, may, without more, reverse the commission. The role of the appointed members of the commission, however important because of their dedicated expertise, is subordinate to that of (two-thirds of) the council.
Accordingly, rejecting plaintiffs' contrary contention, we hold that the statute does not require the city council to act only in a quasi-judicial capacity in reviewing decisions of the historic district commission. The council's function is not limited to determining whether the commission acted reasonably. The statute leaves the ultimate weighing of alternative reasonable courses, and the selection of the preferred reasonable course, to a two-thirds vote of the council.
Judicial review of the council's action is limited to deciding whether the council acted reasonably. We find no error in the trial court's decision that it did.
Affirmed.
NOTES
[1] That a district had been created was not shown by evidence in the record on appeal. Rather than affirm on the ground that no district was shown to exist, we ordered appellant to file in our court a certified copy of any district-creating ordinance so that we might take cognizance of it under R.S. 13:3712 B. Appellant then filed Ordinance 5991, which created a district including the subject property.